UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

AUBREY GORMAN,

     Plaintiff,

v.                             Case No.:  5:22-cv-579-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff Aubrey Gorman seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply brief. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

## B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.    Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on September 4, 2020, alleging disability beginning on June 7, 2017. (Tr. 101, 321-27). The application was denied initially and on reconsideration. (Tr. 101, 148). Plaintiff requested a hearing, and on December 9, 2021 and March 24, 2022, hearings were

held before Administrative Law Judge Bernard Porter ("ALJ"). (Tr. 39-67, 68-75). On April 15, 2022, the ALJ entered a decision finding Plaintiff not under a disability from June 7, 2017, the alleged onset date, through June 30, 2018, the date last insured. (Tr. 20-31).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on September 19, 2022. (Tr. 1-5). Plaintiff filed a Complaint (Doc. 1) on November 18, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 13).

### D.   Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2018. (Tr. 22). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of June 7, 2017, though her date last insured of June 30, 2018. (Tr. 22). At step two, the ALJ found that Plaintiff had the following severe impairments: "internal derangement of the right shoulder." (Tr. 22). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 24).

Before proceeding to step four, the ALJ found that Plaintiff had the following

RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 [C.F.R. §] 404.1567(a) with the following limitations: the claimant has the ability to lift and carry 10 pounds occasionally and 5 pounds frequently; sit for up to 6 hours, stand for up to 2 hours, and walk for up to 2 hours; push and pull as much as she can lift and carry; occasional use of hand controls; no more than occasional overhead reaching; handling, fingering, and feeling would be reduced to frequent; should never work in any environments with temperature extremes. She may be off task up to 10% of the 8-hour workday.

(Tr. 25).

At step four, the ALJ determined that Plaintiff had no past relevant work. (Tr 30). At step five, the ALJ found that considering Plaintiff's age (20 years old on the date last insured), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. 30). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1)   nut sorter, DOT 521.687-086,[1]  sedentary, unskilled, SPV 2

(2)   call-out operator, DOT 237.367-014, sedentary, unskilled, SPV 2

(3)   addressing clerk, DOT 209.587-010, sedentary, unskilled, SPV 2

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

(Tr. 31). The ALJ concluded that Plaintiff had not been under a disability from June 7, 2017, the alleged onset date, through June 30, 2018, the date last insured. (Tr. 31).

## II.   Analysis

On appeal, Plaintiff raises two issues. As stated by Plaintiff, they are:

(1)      Whether the ALJ's finding that Plaintiff's allegations concerning the intensity persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence was supported by substantial evidence; and

(2)      Whether the ALJ's finding that Plaintiff's treating physician's opinion about how long her symptoms were at a disabling level was not persuasive was supported by substantial evidence.

(Doc. 15, p. 17, 23).

## A.   Subjective Complaints

A bit of background is helpful. The relevant time period in this case is from June 7, 2018 through Plaintiff's date last insured of June 30, 2018. (Tr. 22). Plaintiff fell while hiking in June 2017 and sustained an injury to her right shoulder and testified that she was experiencing a lot of pain from an initial subluxation (dislocation) of her right shoulder from this fall. (Tr. 49, 1831). She tried a sling and physical therapy, but the shoulder did not heal. (Tr. 49). Plaintiff's shoulder would dislocate, causing her extreme pain at times. (Tr. 1828). In February 2018, she had surgery. (Tr. 49). At the time of the surgery, she did not have a diagnosis for her conditions, one of which was Ehlers-Danlos Syndrome ("EDS"), which causes hypermobility in all joints. (Tr. 49). Rather than her pain level improving after this

initial surgery, her pain level increased. (Tr. 50). Over time, she had five shoulder surgeries to attempt to alleviate the pain. (Tr. 50). In 2019, Plaintiff was diagnosed with Ehlers-Danlos Syndrome ("EDS") and Thoracic Outlet Syndrome ("TOS"), a condition that causes compression of the nerves, arteries, and veins in the lower neck and upper chest area, causing pain in the arms, shoulders, and neck. (Doc. 15, p. 4-5). Leading up to these diagnoses, Plaintiff saw many doctors and had various treatments, including surgeries – many of which were not helpful – until she finally obtained proper diagnoses and treatments for her conditions. (Doc. 15, p. 3).

As a side note, Plaintiff received supplemental security income on a separate claim and was found disabled as of September 4, 2020, due to a diffuse connective tissue disease (Ehlers-Danlos Syndrome) with associated multi-organ involvement, weak muscles, fatigue, loose joints prone to dislocation as well as Thoracic Outlet Syndrome with chronic pain, causing limitations with activities of daily living. (Tr. 24). Plaintiff depended on a wheelchair for ambulation. (Tr. 24). The issue here is whether the ALJ properly found Plaintiff not under a disability during the relevant one-year period.

Plaintiff claims that the ALJ's reasons were not clearly defined when finding Plaintiff's allegations of disabling pain not entirely consistent with the medical and other evidence of record. (Doc. 15, p. 20). Plaintiff also claims that some of the medical evidence cited by the ALJ was irrelevant to her actual undiagnosed

conditions. (Doc. 15, p. 21). The Commissioner contends that the ALJ considered all the relevant evidence in assessing Plaintiff's RFC. (Doc. 18, p. 8). The Commissioner also contends that the ALJ properly considered Plaintiff's subjective complaints of disabling pain and other symptoms together with all the evidence of record in assessing Plaintiff's RFC. (Doc. 18p. 7).

Generally, a claimant may establish that she is disabled through her own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210).

When evaluating a claimant's testimony, the ALJ should consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication to alleviate pain or other symptoms; (5) treatment other than medication for relief of pain or other symptoms; (6) any measures a claimant uses to relieve pain or other symptoms; and (7) other factors concerning a claimant's functional limitations and restrictions due

to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019).

The ALJ should consider these factors along with all the evidence of record. *Ross*, 794 F. App'x 867. If the ALJ discredits this testimony, then the ALJ "'must clearly articulate explicit and adequate reasons for' doing so." *Id.* (quoting *Dyer*, 395 F.3d at 1210). The ALJ may consider the consistency of the claimant's statements along with the rest of the record to reach this determination. *Id.* Such findings "'are the province of the ALJ,' and we will 'not disturb a clearly articulated credibility finding supported by substantial evidence.'" *Id.* (quoting *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014)). A decision will be affirmed as long as the decision is not a "broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted).

In the decision, the ALJ summarized Plaintiff's testimony at the hearing. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements about the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for reasons explained in the opinion. (Tr. 26). After summarizing the medical evidence, the ALJ found:

The claimant has medically determinable impairments that could reasonably cause symptoms but not to the extent alleged. . . .

Overall, when the record is considered in its entirety, though the claimant has a medical impairment, the totality of the evidence does not support the presence of an impairment, or combination thereof, that imposes listing level restrictions or that substantially interferes with the claimant's ability to perform a reduced range of sedentary work activity during the time period under adjudication. The medical evidence of record suggest that the claimant can sustain a greater capacity than she described at the hearing or in her reports to Disability Determinations. Given this evidence, the undersigned concludes the claimant has not satisfied her burden to show that she cannot work during the time period at issue. The undersigned finds that neither the severity of her impairments nor the extent of her alleged limitations is supported by the objective medical and other evidence of record. Furthermore, the limitations that do exist are adequately accommodated for in the claimant's residual functional capacity as established above. . . .

Due to the date last insured, the claimant has a one-year period to establish disability. In that year, the claimant injured her right shoulder in a fall and had corrective surgery. At physical therapy, the claimant rated her pain as 4 out of 10 in severity prior to her 2018 shoulder surgery. Exhibit 24F. She rated her pain as 7 out of 10 after the surgery. Exhibit 25F. At the hearing, the claimant noted that there was no significant improvement in her shoulder during the time period. However, she was attending school fulltime at FSU until February of 2018, and this is an indicator that she could perform some form of sedentary work. As noted, many of the claimant's difficulties were not diagnosed until after the date last insured.

(Tr. 28). In essence, the ALJ provided very general statements in support of his subjective-complaint analysis, finding only two specific reasons to discount

Plaintiff's statements: (1) Plaintiff's pain level was 4 out of 10 before surgery, and 7 out of 10 after surgery; and (2) Plaintiff attended school fulltime. (Tr. 28).

First, as to Plaintiff's complaints of pain before and after surgery, the ALJ did not appear to consider that Plaintiff's pain before surgery must have been severe enough for Plaintiff to agree to have surgery during the relevant period. Also during the relevant period and after surgery, her pain increased rather than decreased, arguably because Plaintiff's conditions remained undiagnosed and her treatments were not targeted to her actual ailments. Rather than alleviating Plaintiff's shoulder pain, the surgery actually exacerbated it.

Second, the ALJ also supported his subjective complaint analysis by finding that Plaintiff attended school fulltime and this fact was an indicator that Plaintiff could perform work at a sedentary level. But attending college, even fulltime, allows more flexibility than working 8 hours a day, five days per week. *See Boccanfuso v. Comm'r of Soc. Sec.*, No. 8:21-cv-2272-MAP, 2022 WL 16743832, at *5 (M.D. Fla. Nov. 7, 2022) ("Often, a full-time college schedule consists of a total of 12 to 16 hours of course work or classes per week; can be scheduled to accommodate a student's preferences, such as morning classes or night classes; and can often include online courses that a student can review at his convenience."). The ALJ also disregarded that Plaintiff withdrew from college after surgery, and even though she attempted to return to school, she was unable to complete her degree because she

was still experiencing severe right shoulder pain, with associated limitations. (Tr. 50-51).

The Commissioner contends that the ALJ noted that on exam in August 2017, November 2017, and February 2018, Plaintiff had a full range of motion of the right shoulder and 5/5 strength. (Doc. 18, p. 10, Tr. 30). But the ALJ did not cite these medical records to support his subjective complaint analysis. (*See*, 26, 28). Even so, as the ALJ noted, Plaintiff complained of intermittent episodes of instability, numbness, and pain in the shoulder, which arguably reflects her undiagnosed EDS, TOS, or both. (Tr. 27). While Plaintiff may have had a full range of motion and 5/5 strength in her shoulder, her doctors proceeded with surgery to attempt to repair her right shoulder anterior instability with dislocation during the relevant period, which arguably caused Plaintiff to experience more pain. (Tr. 1368-70). Simply because Plaintiff's was diagnosed after the relevant period does not mean that she did not suffer from these ailments during the relevant time period, have treatments that were unhelpful or possibly harmful, and arguably suffered more because of improper treatment. The ALJ did not clearly articulate specific and adequate reasons to discount Plaintiff's subjective complaints. Thus, the ALJ's subjective complaint analysis was not supported by the medical and other evidence of record, and remand is warranted.

**B.      Persuasiveness of Physicians' Opinions**

Plaintiff contends that the ALJ improperly assessed the opinions of Miguel Trevino, M.D., Paldeep Atwal, M.D., and Gregory Pearl, M.D. (Doc. 15, p. 24). Plaintiff asserts that the ALJ found these opinions less persuasive because they were rendered well after the date last insured, and argues this analysis ignores the fact that both EDS and TOS are difficult to diagnose and these diagnoses should be considered if they corroborate the evidence of record during the relevant period. (Doc. 15, p. 24-25). The Commissioner contends that the ALJ properly considered these opinions all rendered well after the date last insured. (Doc. 18, p. 12-13). Because this action is remanded to reconsider Plaintiff's subjective complaints, the Commissioner is directed to reevaluate the opinions of Drs. Trevino, Atwal, and Pearl.

**II.     Conclusion**

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider Plaintiff's subjective complaints, and reconsider the opinions and medical records of Drs. Trevino, Atwal, and Pearl, along with all of the medical and other evidence of record. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on December 21, 2023.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties